## OPERATION OF A MUNICIPAL LIGHTING PLANT AT A LOSS.

Common Pleas Court of Franklin County.

JAMES M. BUTLER v. GEORGE J. KARB, MAYOR, ET AL.

Decided, 1914.

*Municipal Electric Lighting Plants—Allegations which Do Not Warrant Injunction Against Operation of—Jurisdiction Over Such an Action —Capacity of a Tax-Payer to Maintain—Furnishing Current at Less than Cost—Not a Misapplication of Public Funds Nor an Abuse of Corporate·Power—City Not Required by Statute to Light All or Any of Its Streets and Alleys—Varying Rate to Consumers May Not be Discriminatory—Wisdom of Such an Enterprise Not a Matter for Judicial Investigation—Sections 3618 and 3939-12, G. C.*

1. The legal capacity of a tax-payer to maintain an action to enjoin the municipality from maintaining and operating a municipally owned electric light plant at a loss is sufficiently shown by averments as to the official position of the city solicitor and his refusal to bring the action upon request.

2. It is well settled in Ohio that the court of common pleas has jurisdiction over the subject-matter of an action of this character, and having jurisdiction over the subject-matter it also has jurisdiction over the subject under such limitations as are imposed by statute or the principles of the common law upon the extent of the exercise of such jurisdiction.

3. But facts necessary to constitute a cause of action in favor of a tax-payer against administrative officers of a municipality are not shown by an allegation that the prices charged by the municipality for electric current sold to private consumers are substantially less than the cost of generating and distributing said current together with interest on the investment; or that the prices charged to private consumers are not uniform in the sense that they are not unvarying; or that, as a consequence of furnishing current to private consumers, the plant is overloaded and there is not sufficient current to light all the streets and alleys of the city; or that by reason of such overloading the plant is deterioating, involving further loss to the municipality which must be borne by the tax-payer.

*James M. Butler* and *Max Goldsmith,* for plaintiff.

*Henry L. Scarlett,* City Solicitor, and *Wilbur E. Benoy,* Assistant City Solicitor, contra.

BIGGER, J.

The plaintiff in his petition states that he is a citizen, resident and tax-payer of the city of Columbus, Ohio; that the defendant, George J. Karb, is the mayor of the city; the defendant, Samuel A. Kinnear, the director of public service, and the defendant, Byron L. Barger, the director of public safety, and that the said three officials constitute the duly qualified and acting board of control of the said city; that the defendant, Harry Eichorn, is the superintendent of the municipal electric lighting plant of the city and the defendant, E. Clayton Cain, is the auditor of said city. He says that he has duly requested Stewart R. Bolin, the duly elected, qualified and acting city solicitor of the city to bring this action, but that the said solicitor has refused to comply with the request and that this action is brought by the plaintiff on behalf of the city.

The plaintiff states that the city has constructed and is now maintaining and operating a municipal electric light plant for the purpose of furnishing electric current to illuminate the city, to furnish power to said city and to sell the current to private consumers and individuals, that the city has expended large sums of money to build, establish and enlarge said plant; that the city is selling current for light and power purposes to private consumers in the city; that there are many streets, avenues, alleys and public places in the city which are not now lighted for which the citizens are demanding current and which for public safety and enjoyment should be lighted; that they are not lighted for the reason that the present plant has not the capacity to extend said system and to furnish current for more lights for the reasons hereinafter stated; that there are numerous private consumers from said plant; that the prices charged by the city for said current so sold to private consumers are very substantially less than the cost of generating said current, distributing the same and paying the interest on the bonds previously issued and the money used for the purpose of building, equipping and enlarging said plant: that the prices charged to private consumers are not uniform; that much of the current sold to private consumers is for use in the day time, but that during many

months in the year beginning in September and ending in April the street lights are turned on often earlier than four-thirty o'clock P. M.; that substantially all the private consumers use the current until five-thirty o'clock P. M. and frequently later until several and many hours into the night; that a few of the private consumers are operators of moving picture shows and use much of said current at night and for many hours during the night; that by reason of these facts this plaintiff and all other tax-payers of the city are directly paying a part of the cost of said current used by private consumers; that therefore the public funds of the city are misappropriated and will continue to be so unless the court interferes to prevent it; that by reason of the over-lapping of the time when the current is used by private consumers and the time when it is used to light the streets, avenues, alleys and public places in the city, and because the plant is unable to carry a larger load during said hours, the city is unable and is refusing to light many of its streets, avenues, alleys and public places where light is necessary and proper; that the sale of the current to private consumers at the prices now charged is an abuse by the city officials of the power vested in them and of the corporate powers and authority of the city; that private consumers are thus acquiring and taking the property of the city, to-wit, current, without paying a fair and just price therefor and without paying the substantial cost thereof and without any profit thereon; that by reason of these facts the tax-payers are required to pay a higher rate of taxation and substantially more taxes and that the requirements of the citizens are neglected and denied for the private benefit of a comparatively small number of persons, to-wit, the private users of said current. It is further stated that by reason of said current being furnished to private consumers the machinery and equipment is greatly overloaded and burdened far beyond the factor of safety, thus imperiling the whole lighting system of the city; that by reason of the alleged wrongful acts aforesaid the equipment of the plant is rapidly deteriorating and depreciating and greatly in excess of the standard and necessities of a properly loaded plant; that these rates and prices have been followed by

the city and its officers for more than two years, and that unless restrained this course of conduct will be continued by entering into more of these contracts with private consumers. There are some further averments but they are only in the nature of conclusions of the pleader upon the above alleged wrongful acts of the said officials.

The plaintiff asks that the city and the said officials and employees may be enjoined from entering into any further contracts with any person for the use of the current generated at the said plant for private purposes, and also from entering into contract with any person for the use of said current at any rate or price therefor which will not return to the city a fair profit over and above the cost of production and of the cost of distribution, including a proper interest charge on a proper capital investment and including also a proper depreciation on said plant, and especially from entering into any contract with any person for current at a rate less or substantially less than the cost of production and distribution, including a proper interest charge on a proper capital investment and depreciation on the plant; for a mandatory injunction requiring the officials to terminate the contracts heretofore made and from entering into contract with private consumers until such time as the use of said current will not overload the plant, and from furnishing current to private consumers at any time when the street lighting is in operation, and that the city and its officers and agents may be required to extend the lighting system to those parts of the city now without light and that the light be used for public purposes before any of it shall be used for private purposes; and, further, that if any part of the current be permitted to be sold to private consumers that the defendants be enjoined from discriminating between citizens either as to price or location and for all other proper relief.

To this petition the city solicitor has interposed a demurrer on the following grounds:

First. That the plaintiff has not legal capacity to bring or maintain this action.

Second. That the court has no jurisdiction of the subject of the action.

Third.   That the petition does not state facts which show a cause of action in favor of the plaintiff and against the defendants or either of them.

These grounds of demurrer will be considered in their order.

It must always appear either by proper averments in the petition or from presumptions which the law recognizes that the plaintiff is capable of bringing and maintaining the action. When an action is brought by a natural person and his name is stated in the title, no further averments are necessary to show his capacity to bring the action.   If, however, the plaintiff is not a natural person, or brings the action in some representative capacity some statement is called for in addition to the designation contained in the caption.     Where an action is brought under favor of a statute, the facts necessary to show the statutory capacity must be averred. , By virtue of the statute of this state it is made the duty of the city solicitor to apply in the name of the corporation to a court of competent jurisdiction for an order of injunction to restrain the misapplication of the funds of the corporation, or an abuse of its corporate powers, or the execution or performance of any contract made in behalf of the corporation in contravention of the laws or ordinances governing it or which was procured by fraud or corruption.   The statute further provides that in case the solicitor fails upon the request of any tax-payer of the corporation to make the application provided for in the statute, such tax-payer may institute suit or proceeding for such purpose in his own name on behalf of the corporation.

Want of capacity only relates to the disability to maintain an action and does not relate to failure to state a cause of action. By statute the city solicitor is clothed with general capacity to bring an action to enjoin the city from abuse of its corporate powers or the misapplication of the corporate funds.   When the solicitor is requested by a tax-payer to bring the action and he refuses to do so, the statute clothes the tax-payer with the same capacity which is conferred on the solicitor.   The suit in either case is brought on behalf of the corporation.   The capacity in neither case depends upon the sufficiency of the matters pleaded

to show a right to relief, any more than a failure on the part of a natural person to state facts sufficient to constitute a cause of action discloses a want of capacity on his part to bring an action. Capacity to bring an action in a representative capacity is to be determined by the averments showing the relation of the plaintiff to the person represented, natural or artificial, and not by the averments concerning the rights of and the invasion thereof of the person, natural or artificial, represented. When the solicitor makes the proper averments to show his official relation to the municipal corporation, he discloses his capacity to bring the action. He may fail to state sufficient facts to show a right to any relief, but if so he fails not because he has not capacity to bring and maintain the action, but he does not show that he has any cause of action against the city and its officers. The same is true of the tax-payer when he makes the additional averments concerning request made of the solicitor to bring the action and his refusal to do so. The plaintiff in this case after making the proper averments concerning the official position of the city solicitor, makes the proper additional averments concerning the refusal of the solicitor to bring the action upon request. The demurrer therefore upon the ground that the plaintiff has not legal capacity to bring and maintain the suit must be overruled.

The second ground of the demurrer is that the court is without jurisdiction of the subject of the action. While there may be a technical distinction between the subject-matter of an action and the subject of the action, I think the terms are usually used interchangeably, and that by subject of the action in our statute is meant the same thing as subject-matter of the action. That the court of common pleas has jurisdiction of the subject-matter in a case of this kind is too clearly settled to admit of doubt by a long line of adjudicated cases in which the court of common pleas has entertained jurisdiction of actions brought under favor of this statute. There is also a distinction not to be lost sight of between the jurisdiction of a court over a subject matter and the limitations or restrictions imposed either by statute or the principles of the common law upon the extent of

the exercise of that jurisdiction. A court may have jurisdiction of a subject-matter and at the time be limited by the rules of law in the exercise of the jurisdiction. Jurisdiction is not, however, defeated because it may be limited or restricted by law in its exercise. The demurrer upon the second ground must therefore be overruled.

The third ground of the demurrer is that the petition does not state facts which show a cause of action in favor of the plaintiff against the defendants or either of them.

In order to determine this question it is necessary to consider carefully the several grounds of complaint set out in the petition. These may be reduced to the following:

*First,* that the prices charged by the city for current sold to private consumers are very substantially less than the cost of generating the current and distributing the same and paying the interest on the bonds previously issued and the money used for the purpose of building, equipping and enlarging the plant.

*Second,* that the prices charged to private consumers are not uniform.

*Third,* that because of the overlapping of the time when current is used by private consumers and the time when it is needed to light the streets and public places in the city and the limited capacity of the plant, many of the streets, avenues, alleys and public places in the city, which need light and for which the citizens are demanding current, are not lighted, and that the city is unable and is refusing on that account to light the same.

*Fourth,* that by reason of the sale of current to private consumers the machinery and equipment is greatly overloaded and burdened beyond the factor of safety, and is rapidly deteriorating and depreciating in excess of the standard and necessities of a proper lighted plant.

*Fifth,* that these prices and rates have been maintained for more than two years and will be continued unless the court interferes by injunction to restrain the city and its officers from continuing this course of conduct.

These, in substance, are the complaints contained in the petition and which the plaintiff contends constitute a misapplication of the funds of the corporation and the abuse of its corporate powers.

The first complaint is that the prices charged to private consumers are very substantially less than the cost of generating the current and distributing the same and paying the interest on the bonds previously issued and the money used for the purpose of building, equipping and enlarging the plant. Taking this complaint by itself, does it disclose any misapplication of the funds of the city or abuse of the corporate powers conferred by its charter? It would appear from the complaint that the plaintiff entertains the view that the city has no right to sell current to private consumers except at a price which will at least equal the cost of generating and distributing it to the consumers and the interest charged upon the bonds issued to build, equip and extend the plant. I do not understand how this can be a correct test of measure by which to determine a proper rate of charge for current. This leads us to a consideration of the objects and purposes to be accomplished by the city in the construction and maintenance of this plant. The statutes upon the subject of the right of municipalities to erect and maintain such plants are found in Sections 3618 and 3939-12 of the General Code. Section 3618, being a section of the municipal code enumerating the general powers of municipal corporations, provides that the municipalities shall have power "to establish, maintain and operate municipal, light, power and heating plants and to furnish the municipalities and the inhabitants thereof with light, power and heat, to procure everything necessary therefor and to acquire by purchase, lease or otherwise the necessary lands for such purposes within and without the municipality."

Section 3939-12, as amended May 15th, 1911, and approved by the Governor on May 26th, 1911, and which relates to the issuance of municipal bonds for specific purposes provides that, "the city council when it deems it necessary may issue and sell bonds for erecting or purchasing gas works or works for the

generation and transmission of electricity for the supply of gas or electricity to the corporation and the inhabitants thereof.''

In the light of these statutory provisions it would seem that there can be no doubt as to the right of the municipal corporation to manufacture and sell current for light, power or heat to private consumers from its municipal plant as well as to generate current for the lighting of the streets, alleys and public places of the cities. The statute authorizes the city to furnish electrical current both for the purpose of lighting the streets and for the use of the inhabitants of the municipality. The mode of the exercise of this power is confided to the discretion of the city officials. They are not required by the statute to light all the streets, avenues, alleys and public places of the city before furnishing current to private consumers. It is doubtful if a city is under obligation to light its street at night in the absence of statutory requirement, although there is apparently some conflict in the decisions on this subject (*Joyce on Electric Law,* Section 234). If, however, it be the duty of the city to light its streets, there is no requirement of law that it shall light all the streets, avenues, alleys and public places from the municipal plant. The city is authorized by statute to enter into contract for lighting its streets with any person firm or corporation (Section 3809, General Code). It may be more economical for the city to furnish current to light a part of its streets from the municipal plant in conjunction with furnishing power and light to private consumers and to light a portion of its streets by private contract, and that discretion can not be controlled by the court. It would seem from the provisions of the statute law that the city is empowered to erect and maintain an electric light plant for the purpose of furnishing current in its discretion for both purposes. If it assumes the exercise of this power and undertakes to furnish current to private consumers, it must do so in competition with other persons or corporations engaged in the same business, and the court has a right to take judicial notice that in this city the municipal electric light plant is confronted with competition. It could hardly have been within the contemplation of the law that when a plant

owned and operated by a municipality is thus brought into competition with other plants, that it shall be subjected to restrictions and restraints which are not imposed upon its competitors. The position of the plaintiff in reference to this question of price of current to private consumers is, that the contracts with private consumers must be at a sufficient rate to provide for generating and distributing the current and also to provide for the payment of the interest on the bonds issued to build, equip and enlarge the plant. Upon what principle can the entire interest charge on the bonded debt created for the purpose of building, equipping and enlarging the plant be charged upon the current furnished to private consumers? The interest on the bonds issued for that purpose is a fixed charge which must be met either by the earnings of the plant or by taxation. If the plant is confined in its operations wholly to the lighting of the streets and public places of the city, the entire charge must be met by taxation. If, however, current be sold to private consumers at a rate which will cover the cost of generation and distribution and some portion of the interest charge, to that extent the tax-payers are relieved of the burden. What proportion of the current generated at the municipal lighting plant is furnished to private consumers and what proportion is used in lighting the streets and public places of the city is not disclosed. If the amount furnished to private consumers is but a small part of the total current generated, and if that same portion of the current should be charged with the burden of the interest charge on the bonds issued for building, equipping and enlarging the plant, it would seem clear that the municipal plant would stand but little chance with a privately owned plant which distributes that charge ratably to the entire output of its plant. The complaint, therefore, with reference to the price charged to private consumers furnishes no ground for interference by the court or, rather, it should be said the petition does not state facts to show that there is any just ground for complaint as to the price charged.

The next complaint is that the prices charged to private consumers are not uniform. The word uniform in its ordinary

significance means not varying, unchangeable.   The charge is not made more specific.   The plaintiff argues that the city officials in charge of the plant have no right to discriminate between those who apply for the use of the current and that is undoubtedly true.   But what does discrimination mean?   The law does not permit corporations, public or private, to discriminate unjustly as to rates.   But the law does not and never did require that rates should be unvarying.   The rule is that they must not discriminate in rates to different patrons so as to give one an undue advantage over another.   It is, however, not an undue preference to make one patron a less rate than another where differences in conditions exist, when there is such a difference in the expense or difficulty of rendering the service as to justify the difference in rates.  .This rule has been applied in the case of telegraph companies and railway companies.   The law forbids discrimination between patrons for the same service under like conditions.   It would seem that in the case of electric light companies there are patent reasons which would justify a greater difference in rates than in the case of either railroad or telegraph companies.   An electric light plant must convey its product to the consumers.   That is, it is required in the transaction of its business to build its track, so to speak, to each individual consumer.   This necessarily creates a condition which to some extent at least does not exist in the case of railroad and telegraph companies.   In the case of a large consumer of current and whose plant may be in close proximity to the established lines of the plant, the current it would seem could be furnished at a less rate than to one whose plant is remote and who uses but a small amount of current.   The petition, therefore, only averring that the prices are not uniform does not state a fact which shows any right of action in the plaintiff.

The next ground of complaint is that because of the overlapping of the time when current is used by private consumers and the time when it is needed to light the streets and public places of the city and the limited capacity of the plant, many of the streets and public places are not lighted and for which the citizens are demanding current and that the city is unable and re-

fusing for that reason to light same. As I have already pointed out, a city is not required to light all the streets and public places from the municipal plant. It may, if it sees fit to do so, light a part of its streets and public places by contract. It may never have been the intention of the city authorities to light all of its streets and public places from this plant, or it may be that the city is not financially in a condition to so extend its plant that it can at this time do so; but conceding as we must for the purpose of the demurrer that the city refused because of the sale of this current to private consumers to extend at this time the system of street lights from the municipal plant, I find no law, nor has any been cited, which requires the city to discontinue its sale of current to private consumers in order to extend the street lighting from this plant. It is doubtless true that one of the purposes for which the plant was erected was to furnish light for the streets, but the city is also empowered in its discretion to furnish current to private consumers. It may be that one of the purposes or objects of the city in erecting and maintaining the plant is to furnish competition in the business of furnishing light and power to the inhabitants of the city. The court sees no reason to hold that one object may not have been as prominent as the other in leading to the erection and maintenance of the plant. In the opinion of the court this furnishes no ground for the interposition of a court of equity.

The next complaint is that by reason of the sale of current to private consumers, the machinery and equipment is greatly overloaded and burdened beyond the factor of safety and is rapidly deteriorating and depreciating in excess of the standard and necessity of a properly loaded plant. To this it may be said that it might just as truly be charged that because of the extent of the lighting of the streets the plant is overloaded and burdened beyond its capacity. But, looking beyond that, it is, I think, a doubtful question whether or not a court of equity will interfere to restrain municipal authorities who are exercising administrative functions upon the mere ground that they are not acting wisely in the judgment of the court, so long as their acts are clearly within the power granted. It is a well established prin-

ciple of law that municipal officers in the exercise of administrative or legislative discretion, are not subject to judicial control or review in the absence of fraud or that which is equivalent thereto, and there is no charge of fraud made in the petition, and the court must, therefore, assume that the municipal officers are acting in good faith and for what they believe to be the best interests of the city.  The court is not authorized to interfere with the judicial discretion reposed in the city officials unless there is fraud, manifest oppression or gross abuse.  How long the plant has been thus overloaded is not stated.  Such a temporary condition might prevail without furnishing any ground for interference with the discretion of the city officials.  It is incumbent upon the plaintiff to state facts sufficient to show not merely that a case might be proven which would justify an injunction at the hands of the court, but facts must be stated which show that the discretion reposed in the officials has been so abused as to call for action on the part of the court.  It might be that such a condition might exist temporarily while the city was making preparation to relieve it in the case of a plant such as this and which is called upon to extend and enlarge its plant as the business increases, it will sometimes find its capacity overtaxed temporarily while after it furnishes additional equipment it may have greater capacity for a time than is necessary to meet the necessities of the business.  Clearly there must be some limit of discretion permitted to those in charge of the plant in a matter such as this.  Under such circumstances a court of equity would not be called on to enjoin the city officials.  It would certainly lead to serious consequences if the court should entertain suits upon the complaint of tax-payers who should allege that some portion of the city machinery was being operated by those charged with its management beyond its proper capacity, without any complaint that they were doing so with any fraudulent intent or purpose or that they purposed to continue for an unreasonable time to operate beyond its capacity.  It would practically amount to the court's undertaking to guide and control the city officials in the details of the business committed to their care and discretion.  I do not say that a case might not be made which would show such gross mismanagement that it

would be tantamount to fraud or constitute gross abuse, but it would seem that the averments of the petition on this point are not sufficient to call for the interposition of a court of equity.

Upon this subject Judge O'Brien construing the New York statute, says in 'the case of *Talcott* v. *City of Buffalo,* 125 —, at page 288:

"Any other construction would subject the discretionary action of all local officers and municipal bodies to review by the courts at the suit of the tax-payer, a result which would burden the courts with litigation without increasing the efficiency of local administration. Whatever evils may exist in the government of a city that are due to mistakes, errors in judgment or lack of intelligent appreciation of official duty must necessarily be temporary compared with the mischief and inconvenience which judicial supervision in all cases would ultimately produce. Local officers are elected or appointed for such brief periods that frequent opportunity is afforded to the public and the tax-payers interested in their official acts to change them and substitute others in their places. There is a broad field for the operation of the statute without extending it to the official action of the common council in regard to the choice of methods for lighting a city street, a construction which it seems to us would greatly impair the right of local self-government."

The one further complaint is that the prices for current to private consumers have been maintained for two years and will continue to be maintained unless restrained by the court. If the conclusion reached that the petition does not state facts to show that the prices charged constitute any abuse of discretion on the part of the city officials is correct, of course, the continuance of the rates would furnish no grounds for interference. The conclusion, therefore, is that the petition does not state facts sufficient to show a right of action in the plaintiff, and the demurrer is sustained.

Plaintiff will be given leave to amend his petition within ten days.